UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Williams, et al                  Civil Action No. 11-00916

versus                          Judge Richard T. Haik

Homesite Insurance Co.          Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendant Homesite Insurance Company ("Homesite") [Rec. Doc. 48], plaintiffs, Elizabeth and John L. Williams', opposition to Homesite's Motion [Rec. Doc. 58] and Homesite's Reply [Rec. Doc. 60] For the following reasons, Homesite's motion will be granted.

### *I. Background*

Homesite issued Policy No. 30871460 ("the Policy") to plaintiffs, Elizabeth and John Williams, that insured the property located at 7407 Danielle Road, New Iberia, Louisiana ("the Property"). *R. 48-2.* The Policy had effective dates of March 13, 2009 through March 13, 2010. *Id.* The only mailing address listed in the Policy was the address of the Property – 7407 Danielle Road, New Iberia, Louisiana, 70563-0032. *Id.*

On January 28, 2010, 44 days prior to expiration of the Policy, Homesite sent a renewal offer to plaintiffs at the address of the Property as listed in the Policy. *R. 48-1, 48-4, Exh. B.* The renewal packet included a renewal invoice outlining the renewal premium, the billing options and the methods of payment. *Id.* The renewal remittance form showed a minimum amount due of $737.53 and a due date of March 13, 2010. *Id.*

On March 2, 2010, Homesite sent a second letter to plaintiffs at the address shown in the Policy. *R. 48-1, 48-4, Exh. C.* The March 2, 2010 letter advised that a renewal offer had been previously sent and plaintiffs could accept this renewal offer by submitting the amount due indicated on the remittance form by the March 13, 2010 renewal date. *Id.* The March 2, 2010 letter specifically advised that if payment was not received by March 13, 2010, the

renewal policy offer would expire, leaving plaintiffs with no coverage. *Id.*

As Homesite did not receive payment of the renewal premium by March 13, 2010, the 2010-2011 renewal policy was never put into effect. *R. 48-1.* The original Policy expired in accordance with its terms on March 13, 2010, after which plaintiffs no longer had any coverage with Homesite. *Id.*

On March 15 and March 26, 2010, respectively (after the Policy had already expired), Homesite received notices from the United States Post Office that its March 2, 2010 and January 28, 2010 letters to plaintiffs were returned as undeliverable and "UNABLE TO FORWARD." *R. 48-1, 48-3, Exhs. D & E.* Thereafter, on March 31, 2010, Homesite sent a third letter to plaintiffs to advise that the renewal offer had expired and that coverage under the Policy no loner existed because the renewal premium was not paid. *R. 48-1, 48-3, Exh. F.* Homesite send the letter to the same address as the previous undelivered letters because it was the only address in its records. *Id.* As with the other correspondence sent to plaintiffs, the United States Post Office returned the March 31, 2010 letter to Homesite indicating it was "NOT DELIVERABLE" and "UNABLE TO FORWARD." *R. 48-1, 42-3, Exh. G.*

Approximately nine months later, on December 29, 2010, the Property was allegedly damaged by fire. *R.1.* On January 5, 2011, plaintiffs contacted the Homesite customer service center to file a claim and were advised that the Policy was cancelled prior to the date of loss due to nonpayment of the renewal premium. *R. 48-1.*

Plaintiff filed this lawsuit against Homesite on April 29, 2011 in the Sixteenth Judicial District Court, Parish of Iberia, Louisiana, alleging they are the owners of the Property which sustained damages due to the December 29, 2010 fire and that the Policy provides coverage for damages resulting from fire. *R. 1.* Plaintiff asserted claims of breach of contract, bad faith and negligence. *Id.* Plaintiffs acknowledged they did not pay the renewal premium to Homesite but alleged they "believed that the premiums" for the Policy were being paid through "the

Napus Federal Credit Union ("Napus") escrow account."[1] *Id.* The action was removed to this Court on June 20, 2011. *Id.*

Homesite filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) asserting that the Policy had expired on March 13, 2010 and under Rule 12(b)(7) for failure to join their escrow agent as a party pursuant to Rule 19. *R. 8.* The Court denied the motion on November 14, 2012, noting that it could not, at that time, find beyond doubt that plaintiffs could not prove facts to support their claim and gave plaintiffs 15 days to add all necessary parties, including the escrow agent. *R. 35.* Thereafter, plaintiffs filed their Second Amended Restated Complaint naming the alleged escrow agent, Napus, as a defendant. *R. 40.*

In their Amended Complaint, plaintiffs maintained that they did not pay the renewal premium directly to Homesite but that the premium was paid through an escrow account held by Napus. *Id.* Specifically, plaintiffs alleged they paid the monthly mortgage to Napus, which included their homeowner's policy premiums that Napus was required to apply the funds to pay escrow items, and they believed the premiums for their homeowner's policy was being paid for through their escrow account with Napus. *Id.* Napus provided a January 22, 2012 Affidavit of its Collections Specialist, Evan T. Bolster which contradicted plaintiffs' claims that it was required to escrow any funds for plaintiff's homeowner's insurance policy or that Napus was obligated to secure plaintiffs' homeowner's insurance policy. *R. 48-3, Exh. A.* In light of the Affidavit, plaintiffs voluntarily dismissed their claims against Napus on February 14, 2013. *R. 43, 44.*

## *II. Summary Judgment Standard*

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[1] Plaintiffs stated they had "the mailing address of 176 N. Main St. Ext North East, MD, 21901." *R. 1, ¶ 10.*

**3**

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir.2000).

### III. Analysis

Defendants assert in the Motion at bar that plaintiffs' breach of contract claim must be dismissed because plaintiffs cannot recover for the alleged loss that occurred after the March 13, 2010 expiration of the Policy for failure to pay the renewal premium. Defendants further assert that plaintiffs' negligence claims must also be dismissed because under Louisiana insurance law, Homesite does not owe any additional renewal obligations beyond those specified in La. R.S. 22:1335.

Plaintiffs argue that because the offer to renew the Policy was never "manifested" to

plaintiffs, the Policy renewed automatically. Citing the January 25, 2010 notice to Napus which indicates: "Renewal Notification" of the Policy "From: 03/13/2010 To: 03/13/2011 Effective 03/13/2010 ... Continuous Until Cancelled...." plaintiffs argue that Napus was notified that the Policy had been renewed – demonstrating that the Policy was renewed until cancelled. *R. 58* (citing *R. 8-2, Exh. D*). They further contend that the Policy automatically renewed because Homesite did not comply with the Policy's "Cancellation" provision stating, "[w]e may cancel the policy effective from the date the premium payment was due" requires "sending written notice by certified mail."

Based on the undisputed facts in the record before it, the Court finds that the Policy expired on March 13, 2010, for plaintiffs' failure to pay renewal premiums. First, plaintiffs' argument that Homesite failed to follow the proper notice provisions for "cancellation" of the Policy is contradicted by Louisiana law. In *Anderson v. Ichinose,* 760 So.2d 302, 307 (La.,1999), the Louisiana Supreme Court explained that "cancellation" and "expiration" of a policy have "entirely distinct meanings":

> Although the terms 'cancellation' and 'termination' are frequently used synonymously, they are two separate and distinct acts, each carrying significantly different legal requirements and consequences." The term "cancellation" means "the termination of coverage under an insurance contract, with or without cause, by unilateral action of the insurer. The term 'Termination' means 'cessation of coverage under an insurance contract by reason of passage of the policy period or the occurrence of some event anticipated by the terms of the contract.' It follows then that 'although insurance coverage terminates upon cancellation, termination of insurance coverage does not necessarily arise as a result of cancellation.'

*Id.* The original 2009/2010 Policy expired in accordance with its terms on March 13, 2010 for failure to pay the renewal premium. Homesite did not unilaterally cancel coverage under the original policy or the renewal policy. Thus, the "Cancellation" provision is not applicable.

Nor did Homesite's January 25, 2010 renewal notice to Napus indicate that the Policy had already been renewed or was continuous for successive policy periods. The notification

5

merely informed Napus, the mortgagor, of the fact that the renewal period was from March 13, 2010 to March 13, 2010, and once issued, the renewal policy would remain in effect during the renewal period, unless Homesite elected to unilaterally cancel the Policy. Plaintiffs acknowledged that Napus was not the escrow agent and was not responsible for paying the premium for their homeowner's policy. They have provided nothing to indicate that the notification to Napus had any effect on the mortgage or the terms of the Policy. Further, plaintiffs have failed to cite any provisions of the Policy which states that it remains in effect for successive policy periods until cancelled. Rather, the Policy clearly and explicitly states that it is for a specified term only - March 13, 2009 to March 13, 2010.

Thus, the Court finds that the Policy's "Cancellation" provision did not apply in this instance and the Policy did not automatically renew. The Court further finds that Homesite complied with La. R.S. 22:1335 which regulates the renewal of homeowner's policies. Homesite has submitted proof that its renewal notices were mailed through the United States Post Office to the address listed in the Policy 44 days before its expiration, in compliance with 22:1335.[2]

### *IV. Conclusion*

Based on the foregoing, Homesite Insurance Company's Motion For Summary Judgment [Rec. Doc. 48] will be granted.

_____
Richard T. Haik, Sr.

---

[2] La. R.S. 22:1335 provides in pertinent part, "An insurer that has issued a policy of homeowner's insurance shall not fail to renew the policy unless it has mailed or delivered to the named insured, at the address shown in the policy, written notice of its intention not to renew. The notice of nonrenewal shall be mailed or delivered at least thirty days before the expiration date of the policy."